UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-80178-CIV-MIDDLEBROOKS/JOHNSON

JEFFREY O.   et al.,

      Plaintiffs,

vs.

CITY OF BOCA RATON,

      Defendant.

_____/

## ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court the parties' cross motions for summary judgment.[1]
This case involves individual plaintiffs, as well as corporate plaintiffs, Regency Properties of
Boca Raton, Inc. ("Boca House") and Awakenings of Florida, Inc. (collectively referred to as
"Provider Plaintiffs") suing the City of Boca Raton ("City") regarding its passage of Ordinance
No. 4649, later amended by Ordinance No. 4701 ("Ordinance")[2] and Section 28-2 of the Code of
Ordinances ("Section 28-2").  Plaintiffs brought this suit in March 2003.  Plaintiffs allege the

---

[1]These motions include the City of Boca Raton's Motion for Partial Summary Judgment (DE
109) filed on September 14, 2006, to which Plaintiffs responded (DE 116) on October 16, 2006, and
Defendant replied (DE 130) on November 6, 2006, and Plaintiffs' Motion for Partial Summary
Judgment (DE 140) filed on December 1, 2006, to which Defendant responded (DE 150) on
December 20, 2006, and Plaintiffs replied (DE 167) on January 2, 2007.  There is also a cross motion
filed by Defendant which Plaintiffs have moved to strike.  This Motion is not considered due to the
granting of the Motion to Strike which will be discussed in depth later in this order.

[2]The City Council enacted Ordinance 4649 on May 29, 2002 and on April 8, 2003, the City
Council enacted Ordinance 4701, which amended Ordinance 4649.  Ordinance 4701 appears to have
done little in substance to change the definition of Substance Abuse Treatment Facility.  However, it
did substantively change the effective date of the Ordinance, making the effective date 18 months
after the passage of the Ordinance or 60 days after the rendition of a final non-appealable order in
this lawsuit, whichever is later.

City has violated the Fair Housing Act, 42 U.S.C. §3601 et seq. (FHA), Title II of the Americans with Disabilities Act, 42 U.S.C. §12131, et seq. (ADA), and the 14th Amendment to the United States Constitution.  Specifically, Plaintiffs argue that the Ordinance and Section 28-2 ban persons recovering from drug and/or alcohol addiction from residing in any residential neighborhood within the City.

Both parties have moved for partial summary judgment.  The City filed a Motion for Partial Summary Judgment arguing that the Plaintiffs lacked standing to bring certain of their claims where they are not disabled or handicapped.  Plaintiffs moved for summary judgment arguing that the Ordinance and Section 28-2 discriminate against Plaintiffs in violation of the FHA and that the City failed to grant a requested reasonable accommodation to the Plaintiffs in violation of the FHA.  I have reviewed the submissions of the parties and the record in this case.

**Facts**

Individual Plaintiffs are individuals who are recovering alcoholics and/or drug addicts. Provider Plaintiffs own and operate housing units in residential neighborhoods of the City in which such Individual Plaintiffs reside.[3]  These housing units are drug and alcohol free.  Provider Plaintiffs provide services to residents to aid in their drug and alcohol free lifestyle and impose rules in an effort to achieve the same goal.  Such services include counseling and such rules include being subject to drug testing and a curfew.

This case involves two actions taken by the City, which have a direct impact on Plaintiffs. The Ordinance requires any facility that fits the definition of "Substance Abuse Treatment

---

3 The individual plaintiffs who still remain in this suit no longer reside at residences owned by Provider Plaintiffs. However, they did live there at the time the allegedly discriminatory act was committed by the City.  Moreover, the nature of Provider Plaintiffs' residences are such that the natural progression is to have residents move out after having advanced to the point of independent living.  Should the individual plaintiffs relapse, they have stated their intent is to return to Boca House.

2

Facilities" to be located in an area zoned Medical Center District or in some circumstances, with special exception approval, in a Motel Business District.  Substance Abuse Treatment Facilities include "[s]ervice providers or facilities which require tenants or occupants to participate in treatment and rehabilitation activities, or perform testing to determine whether tenants or occupants are drug and/or alcohol free, as a term or condition of, or essential component of, the tenancy or occupancy.. . " Provider Plaintiffs fall within this definition and are currently located in residential neighborhoods.  Thus, the Ordinance requires them to move.

The second action Plaintiffs challenge is Section 28-2 which regulates how many people of a certain type can live in a residential unit by defining the term family.  Section 28-2 defines the term family as:

> 1 person or a group of 2 or more persons living together and interrelated by bonds of consanguinity, marriage, or legal adoption, or a group of persons not more than 3 in number who are not so interrelated, occupying the whole or part of a dwelling as a separate housekeeping unit with a single set of culinary facilities.  The persons thus constituting a family may also include gratuitous guests and domestic servants.  Any person under the age of 18 years whose legal custody has been awarded to the state department of health and rehabilitative services or to a child-placing agency licenses by the department, or who is otherwise considered to be a foster child under the laws of the state, and who is placed in foster care with a family, shall be deemed to be related to a member of the family for the purposes of this chapter.  Nothing herein shall be construed to include any roomer or boarder as a member of a family.

Plaintiffs argue that this definition further impacts their living situation where recovering alcohol and drug addicts are more likely to need to live in sober residences which generally include a group of non-familial people living together to aid each other in recovery.  Therefore, Plaintiffs argue, they are more likely because of their disability to live in non-familial arrangements that violate Section 28-2.

3

**Standard of Review**

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of meeting this exacting standard.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party.  *See Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in their favor.  *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  The non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Further, conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment.  *See Earley*, 907 F.2d at 1081.  The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment.  *See Celotex*, 477 U.S. at 322.

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial.  *See Env't Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).  Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts.  *See Lighting Fixture &*

*Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir. 1969).  If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment.  *See Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see also Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)("[T]he dispute about a material fact is genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *See Adickes*, 398 U.S. at 160.  The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever.  *See Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th  Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party.  *See Anderson*, 477 U.S. at 255.  It is from this point that I begin my analysis.

Let me begin by saying that each party has submitted a statement of material facts in support of their motion and a corresponding statement of facts in opposition to the opposing side's motion.  These submissions highlight the factual disputes between the parties.  Given the presence of such a dispute, I am not inclined to grant either parties' motion.  The motions indicate the parties do not agree about the facts underlying the positions, but instead argue that based on the facts as they see them, they are entitled to summary judgment.  I disagree.  I will address the parties' motions separately.

5

**The City's Motion**

The City moved for summary judgment as to Counts 1-6 and 8-12 arguing that Plaintiffs are not disabled or handicapped under the ADA or the FHA.  Plaintiffs disagree.  The ADA and FHA[4] define disability with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. §12102(2).  The City's Motion focused on the first of these definitions.  Plaintiffs respond that the City has not demonstrated there is no genuine issue of material fact as to whether Plaintiffs meet any of the possible definitions.

The City's first argument is that being a recovering substance abuser is not a per se disability.  I am under a "statutory obligation to determine the existence of disabilities on a case-by-case basis."  *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999).  Given the individualized inquiry required, I agree with the City that Plaintiffs are not entitled to a finding that their addiction causes them to have a per se disability.[5]  However, this does not end the inquiry.

The City's Motion goes on to argue the crux of its position by pointing out that Plaintiffs do not have a physical or mental impairment that substantially limits one or more of the major life activities.  Essentially, the City argues that the Individual Plaintiffs have not met their burden to demonstrate that their recovering status substantially limits one or more major life activities.  Judge King, in *Roig v. Miami Federal Credit Union*, 353 F.Supp.2d 1213 (S.D. Fla. 2005),

---

[4]The ADA definition can also be used to evaluate one's handicap under the FHA where the two definitions are "used interchangeably."  *Cohen v. Township of Cheltenham, Pennsylvania*, 174 F.Supp.2d 307, 324 (E.D. Pa. 2001).

[5] This is not to say there is never a per se disability available, but the facts of this case do not present such an issue, particularly given the absence of binding precedent establishing such a per se rule or its viability in these circumstances.  *See, e.g., Roberts v. Rayonier, Inc.*, 135 Fed. Appx. 351, 355 (11th Cir. 2005)(pointing out the lack of such an analysis regarding an alcohol-related ADA claim).

recently discussed what is required to establish a disability under this first definition.

> Establishing an actual disability, the first possible manner to establish an ADA disability, involves a three-step analysis.  First, a plaintiff must demonstrate that he is impaired.  Second, a plaintiff must identify the life activity that is impaired and demonstrate that it is a "major life activity" under the ADA.  A major life activity includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  "If not contained within these exemplars, the activity must be 'significant' to everyday life."  "Finally, a plaintiff must show that the impairment 'substantially limits' that life activity."  Substantially limits is a severe standard and must include permanent or long-term restrictions on performance of the life activity.

*Roig*, 353 F.Supp.2d at 1216 (internal citations omitted).  Plaintiffs argue that their impairment is their recovering substance abuse status and such status substantially limits their ability to secure housing, which Plaintiffs argue is a major life activity.

Specifically, Plaintiffs point out that due to their recovering status they require housing which includes supervision in a structured group setting[6] and thus, their housing is substantially limited by their impairment.  The Second Circuit addressed a similar connection between one's recovering status and their inability to live independently in *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2nd Cir. 2002)(hereinafter "*RECAP*").  Admittedly, the facts of *RECAP* are slightly different in that "the inability to live independently without suffering a relapse" was a baseline prerequisite for admittance into the RECAP facility.  *Id.* at 47-48.  In this case, Provider Plaintiffs have not stated such inability is a prerequisite to admittance.  However, the residents of Provider Plaintiffs come to Provider Plaintiffs via a referral from an in-patient or out-patient rehabilitation or detoxification facility.  Provider Plaintiffs may not impose the same baseline requirement on individuals seeking to gain

---

[6] Provider Plaintiffs recognize there are various levels of recovery and accordingly, their housing offers four different levels to correspond to such levels of recovery.  One's placement in a certain level is dependent upon the level of supervision and restriction needed to ensure sobriety, and the length of time the individual has been sober.  All participants begin at level one.  The following are part of Provider Plaintiffs' programs:  drug testing, counseling, including individual counseling and/or Alcoholics or Narcotics Anonymous, a prohibition on living with residents' families, having overnight guests, or keeping prescription drugs in individual rooms, and having a curfew.

admittance to Provider Plaintiffs' program, as the facility did in RECAP, but Plaintiffs have submitted at least enough evidence to establish a genuine issue of fact as to whether the residents' inability to live independently substantially impairs their ability as to housing. For example, 99% of Provider Plaintiffs' residents have been through out-patient or in-patient rehabilitation or a detox facility prior to joining Provider Plaintiffs. Approximately 4-5 residents of Provider Plaintiffs relapse per week.[7] The City attempts to negate Plaintiffs' assertions by pointing out that Individual Plaintiffs are able to do everything that normal people do. This case was filed more than three years ago. It is not surprising that the Individual Plaintiffs have been able to become more independent. The City's proffer of 'normalness' does not account for the possibility of a relapse. In addition, the record includes declarations by current residents stating that they need the structure Provider Plaintiffs provide in order to continue in their recovery. These facts are similar to those in *RECAP* where the residents of RECAP could not remain at the facility once they were able to maintain their sober living while living independently. *Id.* at 47. The second circuit in *RECAP* concluded that the RECAP clients met the first definition of disability where their addiction substantially limited their ability to live independently or with their families. *Id.* Other circuits have acknowledged the position that recovering alcoholics and drug addicts may meet the statutory definition of handicapped. *See Lakeside Resort Enterprises, LP v. Board of Supervisors of Palmyra Township*, 455 F.3d 154, 156 n.5 (3rd Cir. 2006); *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 338-39 (6th Cir. 2002); *U.S. v. Southern Management Corp.*, 955 F.2d 914, 920-23 (4th Cir. 1992).

The statute's provisions support the position that such recovering addicts can be protected. *See MX Group, Inc.,* 293 F.3d at 338-39; *Southern Management Corp.*, 955 F.2d at

---

[7]Boca House, the men's facility, has approximately 300 residents and Awakenings, the women's facility, has approximately 90 residents. Roughly 10% of the residents relapse in a given week.

920-23.  The statute specifically excludes individuals currently engaged in the illegal use of drugs, but then goes on to state that such provision does not exclude an individual with a disability as someone who has successfully completed a drug rehabilitation program, is currently in such a program, or is mistakenly regarded as engaging in illegal drug use.  *MX Group, Inc.,* 293 F.3d at 339 n. 3 (citing 42 U.S.C. §12210(b)).  In *MX Group*, the court was dealing with individuals who, in order to be admitted to plaintiff's facility, would have to show they had suffered from drug addiction for at least one year.  *Id.* at 338.  Therefore, admittance to the facility was not directly linked to the substantial limitation of a major life activity as was the case in *RECAP*.  Despite this factual difference, the court in *MX Group* held that the potential clients of the facility were entitled to protection under the ADA.  The City has presented evidence that the Individual Plaintiffs who no longer live in Boca House regard themselves as being able to do all major life activities.  However, Plaintiffs point out the possibility of a relapse and submit evidence of current residents regarding their inability to live independently.  The highly individualized inquiry required of me in these circumstances, the lack of a per se rule regarding drug and alcohol addiction, and the standard to be applied to the City's Motion requiring me to view the evidence in a light most favorable to Plaintiffs, all lead me to conclude that the City is not entitled to summary judgment as to this point.

The City's Motion primarily discusses the actual disability definition, but as Plaintiffs point out in their opposition and the City responds to in its Reply, there are two other definitions available to obtain the protection Plaintiffs request.  Plaintiffs can demonstrate a record of having such an impairment or be regarded as having the impairment.[8]  42 U.S.C. §12102(2).  Plaintiffs

---

[8]The City argues in its Reply that the Plaintiffs did not properly allege these other two definitions.  However, this argument is without merit.  In paragraph eleven of Plaintiffs' Third Amended Complaint, the Plaintiffs allege the actual disability and then go on to allege facts which support the second two definitions.  The Complaint states "[i]n addition, each of the Plaintiff Residents has been diagnosed as suffering from alcohol or drug dependence, is participating or has participated in alcohol or drug treatment on an outpatient basis at facilities

argue that they meet either of these definitions as well, or at the very least there is a genuine issue of material fact as to whether they meet the definitions.

Plaintiffs can also survive the City's Motion for Partial Summary Judgment by establishing that there is a genuine issue of material fact as to whether Plaintiffs have a record of impairment.  In their Opposition, Plaintiffs point out that all Plaintiffs have a record of an impairment where they have a history of alcohol or drug addiction.  However, as the City argues in its Reply, the record of a mere addiction is not sufficient.  The City argues Plaintiffs must have a record of an impairment which substantially limits a major life activity.  The language of the statute is "record of such an impairment."  42 U.S.C. §12102(2)(B).  The use of the word such in the definition "makes clear that [the plaintiff], at some point in the past, must have met or been classified as meeting [the first definition]."  *Burch v. Coca-Cola Co.*, 119 F.3d 305, 321 (5th Cir. 1997).  Therefore, the City's interpretation of what is required is correct.  However, even agreeing with the City's interpretation of what is required under the statute, I still find no basis to grant summary judgment on this issue.

The City does not dispute that the Individual Plaintiffs were addicted to drugs and/or alcohol.  This is the impairment.  There is a record of this impairment where residents of Provider Plaintiffs come to them after having been in a rehabilitation facility being treated for their addiction.  The City argues that there is an insufficiency of evidence to establish a material fact as to whether there is a record that such addiction substantially limited Plaintiffs' major life activities.  Even though the Individual Plaintiffs have moved onto more independent housing situations, they all started at phase one of Provider Plaintiffs' options.  This included not being

---

unrelated to Boca House and Awakenings, and is regarded as disabled."  Third Amended Compl. ¶11.  The first part of this sentence addresses the second definition of having a record of impairment and the second half of the sentence specifically addresses the regarding as definition. Therefore, I will address Plaintiffs' arguments as to all definitions to the extent necessary for purposes of this order.

able to live with their families, being required to live with other sober individuals, having a curfew, getting counseling, and being subject to drug testing, just to name a few of the restrictions.  These restrictions exemplify the substantial limitation Plaintiffs' impairment put on their housing options. If, as discussed above, there are factual questions regarding whether Plaintiffs satisfy the first definition, the same factual issues are present as to the record of such an impairment.  Provider Plaintiffs also submitted declarations of current residents which support the position that the impairment that plagues Provider Plaintiffs' residents substantially limits major life activities, including housing and caring for oneself.  For example, one resident stated that she was homeless during her addiction and the strict guidelines imposed by Provider Plaintiffs ensure her continued sobriety which consequently allows her to have housing.  At least one Individual Plaintiff lost his marriage and home to his addiction. Other residents lost their jobs, businesses, and families due to their addiction.  "Major life activities include 'functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *RECAP*, 294 F.3d at 47.  Plaintiffs have established a genuine issue of fact as to whether they have a record of an impairment that limited their ability to work, care for themselves, including but not limited to keeping a roof over one's head. Accordingly, the City's Motion cannot be granted on this ground.

Addressing the last of the definition possibilities, I turn to the possibility that Plaintiffs were regarded as having such an impairment.  *See* 42 U.S.C. §12102(2).  In support of this position, Plaintiffs point to the very perception which lead to the passage of the Ordinance. Specifically, Plaintiffs point to the statements made at the council meeting when the Ordinance was enacted.  The record includes statements made by the residents of the City talking about getting the addicts out and the ghettoization of the neighborhood as a result of the addicts' continued presence.  It is clear residents of the City regarded Plaintiffs as being addicts.  There may be some question as to whether residents regarded such addiction as substantially limiting at

11

least one of plaintiffs' major life activities.  This is not clear from the record.  However, having found there exist factual issues as to the first two definitions, I need not reach this question where the City's Motion fails on this point based on my discussion above.

The City also moved for summary judgment as to the Corporate Plaintiffs in this case arguing that they have put forth no evidence that demonstrates a genuine issue of material fact as to whether their residents meet the required statutory definition.  The City argues this case is similar to *Cohen v. Township of Cheltenham, Pennsylvania*, 174 F.Supp.2d 307 (E.D. Pa. 2001) where the court granted defendant's motion for summary judgment finding that the evidence was insufficient to support the claim of disability under the FHA.  As discussed above, I disagree with the City's assertion.  Provider Plaintiffs have submitted declarations by current residents which established a genuine issue as to whether the residents of Provider Plaintiffs are disabled which is a material fact in this case.  Moreover, there is conflicting evidence as to the facts surrounding Individual Plaintiffs and their ability to fall within the definition of disabled as discussed above.  This case is not like *Cohen*.  Therefore, based on the foregoing discussion I deny the City's Motion.

**The Plaintiffs' Motion**

Plaintiffs move for summary judgment on their FHA claims as to both the Ordinance and Section 28-2.  Plaintiffs assert that they are entitled to summary judgment as to their claims that the Ordinance violates the FHA based on the City's intentional discrimination and failure to grant a reasonable accommodation to the Plaintiffs.  In addition, Plaintiffs argue summary judgment is appropriate as to their claims that Section 28-2 violates the FHA where it deliberately discriminates against them in violation of the FHA and again where the City failed to provide a reasonable accommodation to the Plaintiffs.  The City's Opposition points out the lack of standing as it argued in its Motion and then goes on to argue the lack of discrimination where

recovering substance abusers can live anywhere in the City and Provider Plaintiffs' facilities are substantially different from a standard apartment building.

As to Plaintiffs' discrimination claims under the FHA, they require that the Plaintiffs be disabled.  This decision involves a factual inquiry which in this case precludes the granting of summary judgment as discussed above.  In addition, Plaintiffs' Motion seeks summary judgment on two counts involving the City's alleged failure to provide a requested reasonable accommodation.  "Generally, the question of whether a proposed accommodation is reasonable is a question of fact."  *Buskirk v. Apollo Metals*, 307 F.3d 160, 170 (3d Cir. 2002); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1527 (11th Cir. 1997).  Plaintiffs requested the repeal of the Ordinance, as well as another accommodation which would allow Provider Plaintiffs to receive reports of drug testing instead of performing such testing on site.  As to Section 28-2, Plaintiffs asked the City to permit four recovering drug addicts or alcoholics to share a two bedroom or larger household.  The question of whether these requests or others made by Plaintiffs were reasonable, is a factual one and thus precludes the granting of summary judgment on this issue.  This highly fact-specific inquiry, coupled with the individualized inquiry required regarding standing cause me to deny Plaintiffs' Motion for Partial Summary Judgment.

**Plaintiffs' Motion to Strike**

Plaintiffs moved to strike the City's Cross Motion for Summary Judgment.  This case was filed more than three years ago.  I received the case in November 2006 at which point the City had already filed its Motion for Partial Summary Judgment.  Plaintiffs had not filed a motion for summary judgment at that point.  Shortly after receiving the case, I held a status conference where deadlines for the case were discussed.  On November 17, 2006, an order was entered establishing December 1, 2006 as the deadline for Plaintiffs to file a motion for summary judgment.  Plaintiffs acted accordingly and then almost three weeks later, the City filed another

13

motion for summary judgment.

Plaintiffs argue the City's cross motion should be stricken where the City did not obtain any prior permission to file a second motion for summary judgment and the local rules expressly prohibit the filing of multiple motions for summary judgment.  S.D. Fla. L.R. 7.1(C)(2).  The City argues that the local rule cited specifically addresses the length of such motions, not situations such as these.  The City also argues that its second motion should not be stricken where the issue of standing, which it raises in its cross motion, can be raised anytime, and the issues it raises in its cross motion dealt solely with the issues Plaintiffs raised in their Motion for Partial Summary Judgment.  The local rules allow a party one chance to file a motion for summary judgment to dispose of the claims at issue.  The City was aware at the status conference that it had already filed its motion for partial summary judgment and the Plaintiffs were going to be given until December 1st, 2006 to file a motion for summary judgment.  Should the City have desired the opportunity to file an additional motion for summary judgment, it had ample opportunity to request permission to do so.  While I understand the City's position that standing is a threshold issue, the City raised such issue in its Motion for Partial Summary Judgment. Therefore, striking the City's Cross Motion does not preclude it from raising this threshold issue. The City requests that should Plaintiffs' Motion to Strike be granted, that I grant it only with leave to refile its opposition to Plaintiffs' Motion for Partial Summary Judgment.

The City filed its Cross Motion separately from its Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment.  I see no reason to allow for the City to refile its opposition.  This case is set for trial in less than a week.  I have considered the City's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment to the extent it opposed Plaintiffs' Motion.  Therefore, while I grant Plaintiffs' Motion to Strike I only do so as to the City's Cross Motion (DE 149), not its Opposition.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that

(1)     Defendant's Motion for Partial Summary Judgment (DE 109) is DENIED;

(2)     Plaintiffs' Motion for Partial Summary Judgment (DE 140) is DENIED;

(3)     Plaintiffs' Motion for Hearing on the Motion for Partial Summary Judgment (DE 143) is DENIED;

(4)     Plaintiffs' Motion to Strike (DE 157) is GRANTED;

(5)     Defendant's Cross Motion for Partial Summary Judgment (DE 149) is STRICKEN;

(6)     Plaintiffs' Motion for Enlargement of Time to Respond to Defendant's Cross Motion for Partial Summary Judgment (DE 182) is DENIED as MOOT.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 16th day of January, 2007.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:     Counsel of Record